1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THOMAS MILLER SPECIALTY OFFSHORE, individually and on behalf of Certain Underwriters Subscribing to Policy UMR B0180ME2017007, <br><br> Plaintiff, <br><br> v. <br><br> ELECTRON HYDRO, LLC, <br><br> Defendant. | Case No. _____ <br><br> VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT |

Comes now Thomas Miller Specialty Offshore, individually and on behalf of Certain Underwriters Subscribing to Policy UMR B0180ME2017007 and alleges as follows:

## I. **PARTIES**

1.1     Thomas Miller Specialty Offshore ("Thomas Miller" or "Plaintiff") is a foreign company, duly organized under the laws of the United Kingdom.

1.2     Thomas Miller is the slip leader subscribing to Policy UMR B0180ME2017007 ("the Policy"), a true and correct copy of which is attached as Exhibit A.

1.3     As a slip leader under the Policy, Thomas Miller is authorized by the underwriters subscribing to the Policy to bring and resolve claims under the Policy.

1.4     Electron Hydro LLC ("Electron Hydro") is a named insured under the Policy.

1.5     On information and belief, Electron Hydro is a foreign limited liability

VERIFIED COMPLAINT FOR DECLARATORY
JUDGMENT - 1
PDX\137148\258724\CJF\33194961.3

company organized under the laws of Delaware, with its principal place of business at 1800 James St., Suite 201, Bellingham, Washington 98225-4631, United States.

1.6     On information and belief, Electron Hydro regularly conducts business within the state of Washington.

## II.     JURISDICTION AND VENUE

2.1.     This is an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 to determine whether there is a duty to defend and indemnify Electron Hydro LLC under Policy UMR B0180ME2017007 ("the Policy"), which is a question of actual controversy between the parties.

2.2.     This is a civil action where the matter in controversy exceeds the sum or value of $75,000 and is between a citizen or subject of a foreign state and a citizen of a State pursuant to 28 U.S.C. § 1332(a)(2).

2.3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Electron Hydro resides Whatcom County, which is within this judicial district.

## III.     FACTS

3.1     The Policy provides for certain insurance coverage, subject to exclusions, for the period of June 24, 2020, through June 24, 2021 ("the Coverage Period").

3.2     As to Electron Hydro, the Policy has limits of $1 million per occurrence and $2 million in the aggregate.

3.3     The United States, the Puyallup Tribe of Indians, Citizens for a Healthy Bay, and Puget Soundkeeper Alliance, all of which are hereinafter referred to as "Underlying Plaintiffs," have filed complaints alleging violations of the Clean Water Act ("CWA") and/or permits issued under authority of the CWA, chiefly arising out of discharge of pollutants into waters of the United States during the Coverage Period (hereafter the Puyallup tribe of Indians, Citizens for a Healthy Bay, and Puget Soundkeeper Alliance are referred to collectively as "Citizens Groups"). The Citizen Groups assert that their CWA claims are "citizen suits"

VERIFIED COMPLAINT FOR DECLARATORY
JUDGMENT - 2

PDX\137148\258724\CJF\33194961.3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

1    according to Section 505 of the Act, 33 U.S.C. § 1365.

2        3.4    The Underlying Plaintiffs' claims were consolidated and are currently pending

3    under Case No. 2:20-cv-01746-JCC in the United States District Court for the Western District

4    of Washington ("the Lawsuit").

5        3.5    Paragraphs 3.6–3.22 below recite allegations made by the Underlying Plaintiffs

6    regarding Electron Hydro in the Lawsuit.

7        3.6    Electron Hydro, an affiliate of Valtec Power LLC, owns a hydroelectric facility

8    ("the facility") on the Puyallup River, near Mount Rainier.

9        3.7    The facility consists of a wood flow diversion structure, a spillway, a water

10   intake, and a 10-mile long flume that conveys diverted water to the powerhouse for electricity

11   generation.

12       3.8    Electron Hydro planned and proposed to complete Electron Hydro Diversion

13   Repair and Spillway Replacement Project ("Project").

14       3.9    As part of the Project, Electron Hydro intended to repair the wooden diversion

15   structure, replace the spillway, and reinforce existing shoreline protection infrastructure.

16       3.10   In order to conduct this work, Electron Hydro constructed a bypass channel to

17   divert water away from the work area adjacent to the facility.

18       3.11   As part of the diversion, Electron Hydro placed 2,409 square yards of artificial

19   turf within the diversion channel, then sealed the artificial turf with plastic liner.

20       3.12   The artificial turf was placed between July 20 and 27, 2020.

21       3.13   On July 28, 2020, Electron Hydro released water into the diversion channel.

22       3.14   On July 29, 2020, the plastic liner ripped, discharging four to six yards of

23   artificial turf and crumb rubber into the main channel of the river ("the Loss").

24       3.15   Artificial turf and crumb rubber continued to discharge to the river for several

25   months, and the aforementioned Lawsuit followed.

26       3.16   Following the discharge of artificial turf and crumb rubber to the bypass

VERIFIED COMPLAINT FOR DECLARATORY
JUDGMENT - 3

PDX\137148\258724\CJF\33194961.3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

channel and the Puyallup River, Pierce County and the United States Army Corps of Engineers ("the Corps") issued stop work orders on August 5 and August 7, 2020, respectively. On September 11, 2020, Pierce County issued a letter requiring Electron Hydro to take certain remedial actions, including removal of concrete culverts that were used as part of the cofferdam to divert flows into the bypass channel, placing rip-rap at the outlet of the fish ladder, removing Conex boxes from the river channel, removing the liner and artificial turf from the bypass channel, and placing "super sacks" at the top of the bypass channel to divert flow.

3.17    The following day, the Corps approved this work by letter but made clear that its letter was not a permit.

3.18    On September 28, 2020, Electron Hydro asked the Corps to extend the in-water work period through October 28, 2020, in order to allow it to perform necessary tasks in the Puyallup River, such as maintaining appropriate pool height in the fish ladder, maintaining the cofferdam, construction of a concrete abutment wall and temporary rock fill diversion and spillway, construction of additional cofferdams in the Puyallup River, and fish protection measures.

3.19    The Corps approved Electron Hydro's request, again noting that its approval was not a permit.

3.20    Following the July rupture of the plastic liner resulting in the release of pollutants into the Puyallup River, Electron Hydro used heavy equipment to perform the in-water work outlined in Pierce County's September 11 letter.

3.21    In late October 2020, flows were diverted away from the bypass channel and the liner and turf were removed.

3.22    Underlying Plaintiffs assert causes of action for violation of 33 U.S.C. § 1311(a) for the unpermitted discharge of crumb rubber from the bypass channel into the Puyallup River.

VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT - 4

PDX\137148\258724\CJF\33194961.3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

3.23    Underlying Plaintiffs allege that the crumb rubber is a pollutant as defined by 33 U.S.C. § 1362(6), and that the bypass channel is a point source as defined by 33 U.S.C. § 1362(14), making the discharge of the crumb rubber from the bypass channel to the Puyallup River a violation of 33 U.S.C. § 1311(a). The complaints further assert that each day that discharges occurred constitutes a separate violation.

3.24    Underlying Plaintiffs assert causes of action for violation of 33 U.S.C. § 1311(a) for the placement of the turf into the bypass channel.

3.25    The complaints allege that the artificial turf meets the definition of "fill material" in 33 U.S.C. § 1344(a) and 40 C.F.R. § 232.2, and the definition of "pollutants" in 33 U.S.C. § 1362(6), making the placement of the artificial turf into the bypass channel an unauthorized discharge in violation of 33 U.S.C. § 1311(a). The complaints allege that each day that fill was present constitutes a separate violation.

3.26    Underlying Plaintiffs assert causes of action for violation of Electron Hydro's Section 402 Permit (i.e., its Construction Stormwater General Permit ("CSGP")). The specific CSGP violations include: (1) failing to report noncompliance; (2) failing to conduct monthly water quality sampling; (3) violating the allowed disturbed acreage limit and failing to apply for a modification; (4) failing to conduct and maintain a record of weekly site inspection reports; (5) failing to maintain its site log books; (6) failing to maintain its SWPPP; (7) failing to stabilize exposed and unworked soil; (8) failing to provide secondary containment for equipment containing fuel; and (9) failing to maintain and repair erosion and sediment control BMPs. The complaints allege that each day that Electron Hydro failed to comply with the permit is a separate violation.

3.27    The United States and the Puyallup Tribe assert causes of action for the violation of Electron Hydro's Section 404 CWA Permits. On March 31, 2020, Electron Hydro sought verification from the Corps that their proposed work would be covered by Nationwide Permits 3 (Maintenance) and 13 (Bank Stabilization). The Corps confirmed coverage on

VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT - 5

PDX\137148\258724\CJF\33194961.3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

DocuSign Envelope ID: 84B5D2DC-E086-43AF-BB6B-53B4DE914145

August 8. The complaint alleges that the use of artificial turf was prohibited under the General Condition 6 of Nationwide Permits 3 and 13, which proscribe the use of "unsuitable material (e.g., trash…)." Additionally, the complaints allege that the Section 404 Permits were violated by the use of a liner that would be "eroded by expected high flows."

3.28    The Puyallup Tribe has alleged that the work performed after the initial discharges of artificial turf and crumb rubber, pursuant to Pierce County's September 11 letter and the Corps' letter authorization, constitute unpermitted discharge of fill material in violation of 33 U.S.C. § 1311(a). Specifically, the Puyallup Tribe's complaint alleges that Electron Hydro violated the CWA "by building a rock diversion structure and cofferdams in the Puyallup River; by placing fill at the diversion structure at the Facility; by placing rip-rap at the fish ladder at the Facility; by placing Conex Boxes of material in the Puyallup River to redirect river flow; and by performing construction and maintenance activities in the Puyallup River at the Facility." The United States has moved to amend its complaint to include these violations.

3.29    The Puyallup Tribe alleges that Electron Hydro has violated Ecology's 401 Certification for the Corps' Nationwide Permits 3 and 13. Under Ecology's 401 Certifications, permittees are required to seek a site-specific 401 Certification under certain conditions. The Puyallup Tribe alleges that a site-specific 401 Certification was required because the Project was likely to contribute to an exceedance of state water quality standards, added temporary fill to waters of the United States that will remain for more than 90 days, was below the ordinary high-water mark, and added new structures.

3.30    The Puyallup Tribe alleges that the operation of the Facility results in the addition of heat to the Puyallup River without an NPDES permit and is therefore in violation of 33 U.S.C. § 1311(a).

3.31    The Puyallup Tribe alleges that the Facility has and continues to discharge solids, sediments, and dead and dying fish without an NPDES Permit, resulting in past and

VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT - 6

PDX\137148\258724\CJF\33194961.3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

DocuSign Envelope ID: 84B5D2DC-E086-43AF-BB6B-53B4DE914145

1  ongoing violations of 33 U.S.C. § 1311(a).

2      3.32    The United States seeks relief in the form of civil penalties pursuant to 33

3  U.S.C. § 1319(d); civil penalties pursuant to 33 U.S.C. § 1344; injunctive relief to remove all

4  remaining fill material and pollutants and to mitigate the effects of violations; an order

5  requiring compliance with CWA, regulations, and permits; and costs.

6      3.33    The Puyallup Tribe seeks relief in the form of civil penalties pursuant to 33

7  U.S.C. § 1319(d); civil penalties pursuant to 33 U.S.C. § 1344; civil penalties pursuant to 33

8  U.S.C. § 1365(a); injunctive relief to remove all remaining fill material and pollutants and to

9  mitigate the effects of violations; an order requiring compliance with CWA, regulations, and

10  permits; a declaratory judgment that Electron Hydro has and continues to violate 33 U.S.C. §

11  1344 due to permit violations; an order requiring Electron Hydro to provide monthly reports

12  of cleanup activities and materials found; a declaratory judgment that Electron Hydro is in

13  violation of Construction Stormwater General NPDES Permit and CWA; an injunction

14  prohibiting operation of the facility in a manner that results in further Construction Stormwater

15  General Permit and CWA; an order requiring immediate SWPPP implementation to comply

16  with Construction Stormwater General NPDES Permit; an order requiring Electron Hydro to

17  provide environmental reports concurrently with submission to EPA or Ecology; a declaratory

18  judgment that Electron Hydro Section 401 of CWA and Section 401 Certification; an

19  injunction prohibiting operation of facility in a manner that violates Section 401 of CWA and

20  Section 401 Certification; a declaratory judgment that Electron Hydro has been and is in

21  violation of 33 U.S.C. § 1311(a); an injunction prohibiting operation of facility in manner that

22  violates 33 U.S.C. § 1311(a); an injunction prohibiting Electron Hydro from discharging

23  pollutants in violation of 33 U.S.C. § 1311(a); and attorney fees and costs.

24      3.34    The Citizen Groups seek relief in the form of civil penalties pursuant to 33

25  U.S.C. § 1319(d); civil penalties pursuant to 33 U.S.C. § 1344; civil penalties pursuant to 33

26  U.S.C. § 1365(a); a declaratory judgment that Electron Hydro is in violation of Construction

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

DocuSign Envelope ID: 84B5D2DC-E086-43AF-BB6B-53BADE914145

1   Stormwater General NPDES Permit and CWA; an injunction prohibiting operation of the

2   facility in a manner that results in further Construction Stormwater General Permit and CWA;

3   an order requiring immediate SWPPP implementation to comply with Construction

4   Stormwater General NPDES Permit; an order requiring Electron Hydro to provide

5   environmental reports concurrently with submission to EPA or Ecology; and attorney fees and

6   costs.

7          3.35    The claims noted in paragraphs 3.22–3.34 above, and any other claims that have

8   been asserted in the Lawsuit, are hereinafter referred to as "the Claims."

9          3.36    The Loss occurred during the Coverage Period.

10          3.37    The Policy provides commercial general liability for covered bodily injury or

11   property damage:

12         We will pay those sums that the insured becomes legally obligated to pay as
13   damages because of "bodily injury" or "property damage" to which this
      insurance applies. We will have the right and duty to defend the insured against
14   any "suit" seeking those damages. However, we will have no duty to defend
      the insured against any "suit" seeking damages for "bodily injury" or "property
15   damage" to which this insurance does not apply. We may, at our discretion,
      investigate any "occurrence" and settle any claim or "suit" that may result.
16

17          3.38    Under the Policy, the right and duty to defend ends when the applicable limit

18   of insurance has been used up as set forth in the Policy.

19          3.39    Underlying Plaintiffs have not sought "damages because of 'bodily injury' or

20   'property damage'" in the Lawsuit.

21          3.40    In the Lawsuit, Underlying Plaintiffs seek civil penalties, declaratory judgment,

22   injunctive relief, and orders of compliance.

23          3.41    Section 1 – Coverages, Coverage A – Bodily Injury and Property Damage

24   Liability provides:

25         We will pay those sums that the insured becomes legally obligated to pay as
      damages because of "bodily injury" or "property damage" to which this
26   insurance applies.

VERIFIED COMPLAINT FOR DECLARATORY
JUDGMENT - 8

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\137148\258724\CJF\33194961.3

3.42    Endorsement 3 to Section 1 of the Policy replaces Exclusion f, which pertains to pollution. With that endorsement, the Policy excludes the following aspects of loss from pollution:

**f. Pollution**

1) Bodily injury or property damage arising out of the actual or threatened discharge, dispersal, seepage, release or escape of pollutants;

2) Any loss, cost or expense, including but not limited to costs of investigation or attorney's fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

As used in this exclusion, pollutants means any solid, liquid, gaseous or thermal contaminant. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

3.43    Crumb rubber is a solid contaminant; therefore, the exclusion noted in paragraph 3.42 above applies to exclude coverage unless an exception were to apply.

3.44    Endorsement 3 contains the following exceptions to the exclusion:

1) Any discharge, dispersal, seepage, migration, release, or escape directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism, or malicious mischief, riot and civil commotion, collision, or upset of a motor vehicle, mobile equipment or aircraft, automatic sprinkler leakage, flood, watercraft and quake.

2) The products-completed operations hazard; or

3) Any discharge, dispersal, seepage, migration, release or escape of pollutants that meets all of the following conditions.

a.      It was accidental and neither expected nor intended by the insured. The condition would not serve to deny for coverage for a specific incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the insured to mitigate or avoid a situation where substantial third party bodily injury or property damage could occur; and

b.      It was demonstrable as having commenced on a specific date during the term of this policy; and

VERIFIED COMPLAINT FOR DECLARATORY
JUDGMENT - 9

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

DocuSign Envelope ID: 84B5B2DC-E086-43AE-BBCB-52B4D591414E

c.      Its commencement became known to the named insured within 20 calendar days; and

d.      Its commencement was reported in writing to you within 80 calendar days of becoming known to the finance department; and

e.      Reasonable effort was expended by the named insured to terminate the situation as soon as conditions permitted.

3.45    Endorsement 3 further provides as follows:

However, nothing contained in this provision shall operate to provide any coverage with respect to:

a.      Any site or location principally used by the insured, or by others on the insured's behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

b.      Any fines or penalties;

c.      Any cleanup costs ordered by the superfund program, or any federal, state or local governmental authority. However, this specific exclusion c. shall not serve to deny coverage for third party cleanup costs otherwise covered by this endorsement simply because of the involvement of a governmental authority;

d.      Acid rain;

e.      Clean up, removal, containment, treatment, detoxification or neutralization of pollutants situated on premises the insured owns, rents or occupies at the time of the actual, discharge, dispersal, seepage, migration, release or escape of said pollutants.

3.46    The remedies sought by Underlying Plaintiffs in the Lawsuit are not damages because of bodily injury or property damage to which the Policy applies. Even if the remedies are damages to which the Policy applies, coverage for such damages is excluded by Endorsement 3. As a result, the Policy does not provide coverage for the claims asserted in the Lawsuit.

3.47    Even if the remedies sought by the Underlying Plaintiffs were damages and the additional exclusionary language Endorsement 3 were to not apply, the Policy also "excludes any Construction activities (except routine maintenance on operational projects) by or on the

VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT - 10

PDX\137148\258724\CJF\33194961.3

DocuSign Envelope ID: 84B5D2DC-F086-43AE-BBCB-52B4D591414E

1    Insured's behalf."

2        3.48    Because the Project consisted of construction activities, there is no coverage

3    under the Policy.

4        3.49    On or about March 11, 2022, Thomas Miller sent a reservation-of-rights letter

5    ("the Letter") to Electron Hydro and stated that upon confirmation from Electron Hydro that

6    all Scheduled Underlying Insurance has been exhausted, and that the deductible has been

7    satisfied, Subscribing Underwriters will provide Electron Hydro with a defense against the

8    Lawsuit, subject to a full reservation of rights.

9        3.50    The Letter also denied coverage for Thom A. Fischer and Tollhouse Energy

10   Company, who were also named as defendants in the Lawsuit.

11       3.51    As of the date of this filing, Electron Hydro has not responded to the Letter.

12       3.52    The instant cause of action instituted by Thomas Miller is timely.

13                            **IV.    CLAIM FOR RELIEF**

14       4.1     There is no duty to defend or indemnify Electron Hydro against the Claims in

15   the Lawsuit.

16       4.2     There is an actual controversy between the parties concerning whether there is

17   a duty to defend or indemnify Electron Hydro for the Claims in the Lawsuit.

18       4.3     A prompt and speedy declaration of the rights and duties of the parties is

19   necessary and appropriate at this time, considering the clearly delineated issues outlined in this

20   complaint for declaratory judgment.

21                              **V.    PRAYER**

22       WHEREFORE, Thomas Miller prays for judgment as follows:

23       1.      That the Court declare that there is no duty to defend or indemnify Electron

24   Hydro for the Claims in the Lawsuits;

25       2.      For the costs of suit incurred herein; and

26

VERIFIED COMPLAINT FOR DECLARATORY
JUDGMENT - 11

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

PDX\137148\258724\CJF\33194961.3

DocuSign Envelope ID: 84B5D2DC-F086-43AE-BBCB-52B4D591414E

3.     For such other and further relief as the Court may deem just and appropriate in this case.

Dated this 21st day of April, 2022.

SCHWABE, WILLIAMSON & WYATT, P.C.

By:     /s/ Colin Folawn
        Colin Folawn, WSBA #34211
        Email: cfolawn@schwabe.com

By:     /s/ Ryen L. Godwin
        Ryen L. Godwin, WSBA #40806
        Email: rgodwin@schwabe.com

By:     /s/ Rosa O. Ostrom
        Rosa O. Ostrom, WSBA #55933
        Email: rostrom@schwabe.com
        1420 5th Avenue, Suite 3400
        Seattle, WA 98101-4010
        Telephone:  206.622.1711
        Facsimile:   206.292.0460
        *Attorneys for Plaintiff, Thomas Miller
        Specialty Offshore, Individually and on
        Behalf of Certain Underwriters
        Subscribing to Policy UMR
        B0180ME2017007*

VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT - 12

PDX\137148\258724\CJF\33194961.3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA 98101-4010
Telephone: 206-622-1711

DocuSign Envelope ID: 84B5D2DC-F086-43AE-BBCB-52B4D591414E

1

## VERIFICATION

2

1.    My name is Ryan Green. I am over the age of 18 and am competent to testify to the matters attested to herein.

3

4

2.    I am a claims executive with Thomas Miller Specialty Offshore, the plaintiff.

5

3.    I have read the foregoing Verified Complaint for Declaratory Judgment. Based upon my personal knowledge and upon a review of documents and correspondence kept in the ordinary course of business, I verify that the contents of the foregoing Verified Complaint for Declaratory Judgment are true and correct to the best of my knowledge, except for those allegations made upon information and belief, and these I believe to be true.

6

7

8

4.    I DECLARE under penalty of perjury under the laws of the state of Washington and the United States of America that the foregoing is true and correct.

9

Executed this ____ day of _____, 2022, at Newcastle, England, United Kingdom.
22nd            April

10

11

DocuSigned by:

12

*Ryan Green*
332743BCB4364C2...
Ryan Green

13

14

15

16

17

18

19

20

21

22

23

24

25

26

VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT - 13

PDX\137148\258724\CJF\33194961.3

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1420 5th Avenue, Suite 3400
Seattle, WA  98101-4010
Telephone: 206-622-1711

# EXHIBIT A

# EXHIBIT A



| UMR<br><br>**B0180ME2017007** | **180<br>RKH** |
|---|---|

| **MARKET REFORM CONTRACT** |
|---|

| Reinsured |
|---|

| Insured<br><br>**Valtec Power LLC** |
|---|

| Period<br><br>**From: 24th June 2020     To: 24th June 2021** |
|---|

| Order | No of Slips |
|---|---|
| | Hereto WTN |
| | Total WTN |
| | Sign % |

| For LPSO use |
|---|

| For ILU use |
|---|

| For LIRMA use |
|---|



**UMR: B0180ME2017007**

# Risk Details:

| | |
|---|---|
| **UNIQUE MARKET REFERENCE:** | B0180ME2017007 |
| **ATTACHING TO LINESLIP REFERENCE:** | B0180MEF190054 |
| **TYPE:** | Liability Insurance |
| **INSURED:** | **Valtec Power LLC; Smith Creek Hydro LLC; Electron Hydro LLC; Black Creek Hydro Inc.; Hydro Sierra Energy LLC,** and all affiliated and associated and subsidiary companies, interests, entities, divisions or other controlling interests of which the Insured has an interest or financial control or responsibility to insure which are hereby scheduled projects. |
| **ADDITIONAL INSUREDS:** | Smith Creek Management; Smith Creek Holdings; Electron Management; Electron Holdings; Deadwood Creek Holdings; Deadwood Creek Management; Whitewater Engineering |
| | Puget Sound Energy in respect of Electron Hydroelectric Project only. |
| **ADDRESS OF INSURED:** | 1800 James Street, Ste. 201, Bellingham, Washington, 98225, United States |

**PERIOD:**      From:      **24th June 2020**
                        To:         **24th June 2021**
                        both days at 12.01am Local Standard Time at the address of the Insured

**INTEREST:**      Commercial General Liability

**LIMITS OF LIABILITY:**      <u>Limits apply separately in respect of Smith Creek and Electron projects</u>

| | |
|---|---|
| USD 1,000,000 | Each Occurrence Limit |
| USD 2,000,000 | General Aggregate Limit |
| USD 2,000,000 | Products-Completed Operations Aggregate Limit |
| USD 2,000,000 | Personal and Advertising Injury Limit |
| USD 1,000,000 | Damage to Premises Rented to You Limit |
| USD 10,000 | Each Occurrence Limit in respect of Medical Payments |

<u>Limits apply separately in respect of Black Creek and Deadwood Creek projects</u>

| | |
|---|---|
| USD 5,000,000 | Each Occurrence Limit |
| USD 5,000,000 | General Aggregate Limit |
| USD 5,000,000 | Products-Completed Operations Aggregate Limit |
| USD 5,000,000 | Personal and Advertising Injury Limit |
| USD 5,000,000 | Damage to Premises Rented to You Limit |
| USD 10,000 | Each Occurrence Limit in respect of Medical Payments |

**DEDUCTIBLE:**      <u>In respect of Smith Creek and Electron only</u>

| | |
|---|---|
| USD 100,000 | Each Occurrence |

<u>In respect of Black Creek and Deadwood Creek only</u>

| | |
|---|---|
| USD 25,000 | Each Occurrence |



**UMR: B0180ME2017007**

In respect of all projects

USD 1,000                    Each Occurrence in respect of Hired or Non-
                             Owned Autos

**SITUATION:**        Worldwide

**CONDITIONS:**       ISO Comprehensive General Liability (Occurrence) Form CG 00 01 04 13
                      amended as follows:

**SECTION I – COVERAGES** amended as follows
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**2. Exclusions a. Expected or Intended Injury** is amended to read as
attached (Endorsement 1).

**2. Exclusions e. Employer's Liability (1)** amended to read as attached
(Endorsement 2).

**2. Exclusions f. Pollution** is deleted in its entirety and replaced with the
attached **NAMED PERIL AND TIME ELEMENT POLLUTION** endorsement
(Endorsement 3).

**2. Exclusions j. Damage To Property**
(1) The words "or occupy" are deleted.
(4) is deleted.

**SECTION II – WHO IS AN INSURED** is amended to read as attached
(Endorsement 4).

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**Item 2;** Underwriters agree to include the following;

e. In the event that an insured reports an "occurrence" to the workers
compensation carrier of the named insured, and this "occurrence" later
develops into a General Liability claim covered by this policy, the failure to
report such "occurrence" to us at the time of the "occurrence" shall not be
deemed in violation of this condition. You must, however, give us notice as
soon as practicable after being made aware that the particular claim is a
General Liability rather than a Workers Compensation claim.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
**Item 4 Other Insurance a. Primary Insurance is subject to the PRIMARY
INSURANCE ENDORSEMENT** CGU12W as attached (Endorsement 5).

**Item 9. Non-renew** reference to 30 days is deleted and replaced with 90
days written notice.

**SECTION V – DEFINITIONS**

**3.** "Bodily Injury" shall also mean mental injury, mental anguish,
discrimination, humiliation, shock or death if directly resulting from bodily
injury, sickness, disability or disease.

**4.** is deleted and replaced with the following:-
**4.** "Coverage Territory" means Worldwide

The reference to construction or demolition operations within 50 feet of a
railroad or railroad property within **9.** Is deleted.



**17.** is deleted and replaced with:

**"Property damage"** means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

        For the purposes of this insurance, electronic data is not tangible property.

        As used in this definition, electronic data includes, but is not limited to, information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Supplementary Exclusions A (CGU12A) to apply as attached (Endorsement 6); However, Exclusion 5. is deleted and replaced with the attached (Endorsement 7).

Coverage hereon is subject to the Additional Insured Endorsement as attached (Endorsement 8).

Coverage hereon is subject to the In Rem Endorsement CGU 12 0 D, as attached (Endorsement 9).

Coverage hereon is subject to Knowledge of Occurrence Endorsement, as attached (Endorsement 10).

Coverage hereon is subject to the attached Actions Over Indemnity Endorsement (CGU 12 0 A) (Endorsement 11).

Coverage hereon is subject to the Waiver of Subrogation Endorsement CGU12L as attached (Endorsement 12).

Hired and Non-Owned Auto Liability Coverage Endorsement, as attached (Endorsement 13)

LMA5389 U.S. Terrorism Risk Insurance Act of 2002 as amended New & Renewal Business Endorsement as attached.

Notwithstanding any other provision herein, "Defence Expenses" are payable in addition to the Limits of Liability specified herein, as per the attached Defence Provisions Endorsement. The maximum additional amount payable for "Defence Expenses" is not to exceed the Limits of Liability within this policy.

Certificates and/or Evidences of Insurance: Permission is granted to RSG Underwriting Managers LLC trading as Power Energy Risk (PERse) to issue Certificates of Insurance and/or Evidences of Insurance naming Additional Insureds. Such Certificates and/or Evidences may contain waivers of rights of subrogation. In the event that Underwriters issue notice of cancellation to the Insured, RSG Underwriting Managers  LLC trading as Power Energy Risk (PERse) are additionally authorised to advice such Additional Insureds accordingly.



UMR: B0180ME2017007

Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical And Electromagnetic Weapons Exclusion Clause (CL370).

Access, Collection and Disclosure of Information and Electronic Data Loss Exclusion Endorsement, as attached.

Limitation of Coverage to Designated Premises or Project Endorsement, as attached.

Coronavirus Exclusion (LMA 5395), as attached.

Broad Form Loggers Endorsement, as attached.

Employee Benefits Liability Endorsement, as attached.

Stop Gap – Employers Liability Coverage Endorsement – Washington, as attached.

Sanctions Limitation and Exclusion Clause LMA 3100 as attached.

This Policy excludes any Construction activities (except routine maintenance on operational projects) by or on the Insured's behalf.

Certificates and/or Evidences of Insurance: Permission is granted to RSG Underwriting Managers LLC trading as Power Energy Risk (PERse) to issue Certificates of Insurance and/or Evidences of Insurance naming Additional Insureds. Such Certificates and/or Evidences may contain waivers of rights of subrogation. In the event that Underwriters issue notice of cancellation to the Insured, RSG Underwriting Managers  LLC trading as Power Energy Risk (PERse) are additionally authorised to advice such Additional Insureds accordingly.

Notification of claims to: RKH Specialty via newclaimsenergy@rkhspecialty.com

LMA5389 U.S. Terrorism Risk Insurance Act of 2002 as amended New & Renewal Business Endorsement as attached.

| | |
|---|---|
| **LOSS PAYEE:** | Insured or Order. |
| **NOTICES:** | California Complaints Notice clause (LMA9136);<br>California Surplus Lines Notice clause (LMA9099B and LMA9030);<br>California Disclosure Notice (LMA9098B - D-2). |
| **EXPRESS WARRANTIES:** | None, other than as may be included in the Policy Wording |
| **CONDITIONS PRECEDENT:** | None, other than as may be included in the Policy Wording |
| **SUBJECTIVITIES:** | None. |
| **CHOICE OF LAW AND JURISDICTION:** | Jurisdiction:  Institute Service of Suit Clause Cl.355 dated 1st November 1992<br>Law:  This insurance shall be subject to the Law and Practice of New York |
| **PREMIUM:** | USD 88,935 (100%) in full per annum and daily pro rata. |

TRIPRA
Inclusive of an allocation of 1% (for 100%) annual and daily pro rata for terrorism risk coverage provided in accordance with the US Terrorism Risk Insurance Act of 2002 and/or US Terrorism Risk Insurance Programme Reauthorization Act of 2015 ("TRIPRA").

DocuSign Envelope ID: 84B5D2DC-508C-43AF-BBCB-53B4DE91414E



**UMR: B0180ME2017007**

Subject to the Insured paying the inclusive premium charge specified herein, any terrorism exclusion or related coverage limitation contained herein shall not apply to the extent that it conflicts with the US Terrorism Risk Insurance Act of 2002 and/or US Terrorism Risk Insurance Programme Reauthorization Act of 2015 ("TRIPRA"), but shall in all other circumstances remain in full force and effect.

The Insured is advised that coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law.  Under this formula the United States pay 85% of covered terrorism losses exceeding the statutorily established deductible paid by the Insurers providing the coverage.  The premium charged for this coverage is specified herein and does not include any charges for the portion of loss covered by the Federal Government under the Act.

No return premium if not taken up.

**PREMIUM PAYMENT TERMS:**   LSW3000 Premium Payment Clause (60/15) as attached.

**TAXES PAYABLE BY
INSURED AND
ADMINISTERED BY
INSURERS:**            None applicable.

**RECORDING,
TRANSMITTING & STORING
INFORMATION:**        Where RKH Specialty maintains risk and claim data/information/documents RKH Specialty may hold data/information/documents electronically.

**INSURER CONTRACT
DOCUMENTATION:**      This document details the contract terms entered into by the insurer(s), and constitutes the contract document.

Any further documentation changing this contract, agreed in accordance with the contract change provisions set out in this contract, shall form the evidence of such change.

This contract is subject to US state surplus lines requirements. It is the responsibility of the surplus lines broker to affix a surplus lines notice to the contract document before it is provided to the insured. In the event that the surplus lines notice is not affixed to the contract document the insured should contact the surplus lines broker.

DocuSign Envelope ID: 84B5D2DC-508C-43AF-BBCB-53B4DE91414E



**UMR: B0180ME2017007**

**U.S. Terrorism Risk Insurance Act of 2002 as amended**
**New & Renewal Business Endorsement**

*This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended, as summarized in the disclosure notice.*

In consideration of an inclusive premium of 1% paid, it is hereby noted and agreed with effect from inception that the Terrorism exclusion to which this Insurance is subject, shall not apply to any "insured loss" directly resulting from any "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA").

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the type insured by this Insurance directly resulting from an "act of terrorism" as defined in TRIA. The coverage provided by this Endorsement shall expire at 12:00 midnight December 31, 2027, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates. The Terrorism exclusion, to which this Insurance is subject, applies in full force and effect to any other losses and any act or events that are not included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject. All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are not responsible under the terms of TRIA (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on the Underwriter's liability for payment for terrorism losses.

LMA5389
09 January 2020

DocuSign Envelope ID: 84B5D2DC-F086-43AF-BBCB-53B4DE91414E



**UMR: B0180ME2017007**

## PREMIUM PAYMENT CLAUSE

The Insured undertakes that premium will be paid in full to Underwriters within 60 days of inception of this Policy (or, in respect of installment premiums, when due).

If the premium due under this Policy has not been paid to Underwriters by the 60th day from the inception of this Policy (and, in respect of installment premiums, by the date they are due) Underwriters shall have the right to cancel this policy by notifying the Insured via the broker in writing.  In the event of cancellation, premium is due to Underwriters on a pro-rata basis for the period that Underwriters are on risk but the full policy premium shall be payable to Underwriters in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this policy.

It is agreed that Underwriters shall give not less than 15 days prior notice of cancellation to the Insured via the broker.  If premium due is paid in full before the notice period expires, notice of cancellation shall automatically be revoked.  If not, the policy shall automatically terminate at the end of the notice period.

Unless otherwise agreed, the Slip Leader (and Agreement Parties if appropriate) is authorised to exercise rights under this clause on their own behalf and on behalf of all Underwriters participating in this contract.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

Where the premium is to be paid through a London Market Bureau, payment to Underwriters will be deemed to occur on the day of delivery of a premium advice note to the Bureau.

11/01
LSW 3000

DocuSign Envelope ID: 84B5D2DC-5086-43AF-BBCB-53B4DE91414E



UMR: B0180ME2017007

### DEFENCE PROVISIONS ENDORSEMENT

**DEFENCE PROVISIONS:**

**A.** We will have the right and duty to defend any  "suit" against the "insured" that seeks damages for "bodily injury", "property damage" or "personal and advertising injury" covered by this policy, even if the "suit" is groundless, false or fraudulent when :

    **1.** The total applicable limits of "scheduled underlying insurance" have been exhausted by payment of damages to which this policy applies and the total applicable limits of "other insurance" have been exhausted; or

    **2.** The damages sought because of "bodily injury", "property damage" or "personal and advertising injury" would not be covered by "scheduled underlying insurance" or any applicable "other insurance", even if the total applicable limits of either the "scheduled underlying insurance" or any applicable "other insurance" had not been exhausted by the payment of damages .

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

**B.** We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

**C.** When we assume the defence of any "suit" against the "insured" that seeks damages covered by this policy, we will:

    **1.** Investigate, negotiate and settle the "suit" as we deem expedient; and

    **2.** Pay the following supplementary payments to the extent that such payments are not covered by "scheduled underlying insurance" or any applicable "other insurance":

        **a.** All expenses we incur;

        **b.** Premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

        **c.** Premiums on appeal bonds required by law to appeal a judgment in a "suit" for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

        **d.** All court costs taxed against the "insured" in the "suit". However, these payments  do not include attorneys' fees or attorneys' expenses taxed against the insured;

        **e.** Pre-judgment interest awarded against the "insured" on that part of the judgment within the applicable Limits of Insurance of this policy we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest accruing after we make such offer;

        **f.** Post-judgment interest that accrues after entry of judgment on that part of the judgment within the applicable Limits of Insurance of this policy we pay and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

        **g.** The "insured's" expenses incurred at our request or with our consent.

**D.** Except as provided in Paragraph A. above, we will have no duty to defend any "suit" against the "insured". We will, however, have the right, but not the duty, to participate in the defence of any "suit" and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

DocuSign Envelope ID: 84B5D2DC-5086-43AF-BBGB-53B4DE91414E



**UMR: B0180ME2017007**

**E.** We will not defend any "suit", or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of damages and we will have the right to withdraw from the further defence of such "suit" by tendering control of said defence to the "insured".

All other terms, clauses and conditions remain unaltered.

DocuSign Envelope ID: 8435D2DC-5086-43AF-BBCB-53B4DE91414E



**UMR: B0180ME2017007**

**INSTITUTE RADIOACTIVE CONTAMINATION, CHEMICAL, BIOLOGICAL, BIO-CHEMICAL AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE**

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith**

1. In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

    1.1 ionising radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3 any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

    1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter.  The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes

    1.5 any chemical, biological, bio-chemical, or electromagnetic weapon.


10/11/03
CL370


All other terms and conditions of this policy remain unaltered.

DocuSign Envelope ID: 84B5D2DC-F086-43AF-BBCB-53B4DE91414E



**UMR: B0180ME2017007**

## ACCESS, COLLECTION AND DISCLOSURE OF INFORMATION AND ELECTRONIC DATA LOSS EXCLUSION ENDORSEMENT

Notwithstanding any other provision of this policy, it is hereby agreed effective as of the inception date that this policy shall not apply to, and the insurer shall have no liability to the insured for actual or alleged liability arising out of, in connection with or in any way related to:

    a. Any access to, collection of, release of or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health or medical information or any other type of nonpublic information; or

    b. The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "Electronic Data" (defined below).

However, this exclusion does not apply to actual or alleged liability for "bodily injury" or "property damage".

For the purposes of this Endorsement only, "property damage" shall mean:

(a) physical loss of, physical damage to, or physical destruction of tangible property of a third party, including loss of use of the tangible property so lost, damaged or destroyed;

(b) loss of use of tangible property which has not been physically injured or destroyed.

For the purposes of this Endorsement only, "bodily injury" shall not include mental anguish, mental illness, emotional upset or any other non-physical injury.

The following definition is added to the policy and applies to this endorsement:

"Electronic Data" means any information, facts or programs stored as or on, created or used on, or transmitted to or from any computer software or system, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media that are used with electronically controlled equipment or other electronic backup facilities, and data transmission or storage provided by means of the Internet.

**ALL OTHER TERMS, CLAUSES AND CONDITIONS REMAIN UNCHANGED.**



**Page 13 of 36**

UMR: B0180ME2017007

**LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Premises:

Project:

1)      **Smith Creek Hydro Project**

-      Located on the Kootenai River in Northern Idaho, 5 miles from the Canadian border
-      Site address: 22176 Westside Rd, Bonners Ferry, Idaho, 83805

2)      **Electron Hydroelectric Project**

-      Located on the Puyallup River in Pierce County, Washington, approx. 25 miles SE of Tacoma
-      Site address: 19318 Electron Road East, Pierce County, Orting, Washington, 98360

3)      **Black Creek Hydroelectric Power**

-      Located in North Bend, Washington
-      Site address: W, King County, North Bend, Washington, 98045

4)      **P-6780 Deadwood Creek Project Hydro Project**

-      Located in Strawberry Valley, California
-      Site address: Upper end of New Bullards Bar Reservoir, Yuba County, Strawberry Valley, California, 95981

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1.      The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2.      The project shown in the Schedule.

All other terms, clauses and conditions remain unaltered.

DocuSign Envelope ID: 84D5D2DC-5086-43AF-BBCB-53B4DE91414E



**UMR: B0180ME2017007**

## CORONAVIRUS EXCLUSION

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

This insurance excludes coverage for:

1) any loss, damage, liability, cost, or expense directly arising from the transmission or alleged transmission of:

   a) Coronavirus disease (COVID-19);
   b) Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2); or
   c) any mutation or variation of SARS-CoV-2;

   or from any fear or threat of a), b) or c) above.

2) any liability, cost or expense to identify, clean up, detoxify, remove, monitor, or test for a), b) or c) above;

3) any liability for or loss, cost or expense arising out of any loss of revenue, loss of hire, business interruption, loss of market, delay or any indirect financial loss, howsoever described, as a result of any of a), b) or c) above or the fear or the threat thereof.

All other terms, conditions and limitations of the insurance remain the same.

**LMA5395**
**09 April 2020**

DocuSign Envelope ID: 84B5D2DC-F086-43AF-BBCB-53B4DE91414E



UMR: B0180ME2017007

## BROAD FORM LOGGERS ENDORSEMENT

This endorsement applies in excess of USD 1,000,000.

Coverage under this endorsement applies up to a maximum annual Aggregate limit of USD 5,000,000
With respect to logging or mill operations conducted by or for you, or operations incidental thereto, the following applies:

### 1) FIRE FIGHTING EXPENSE

We will pay any firefighting expense incurred others for which you are legally liable. Such expense must have been incurred because of fire resulting from an "occurrence" directly connected with logging or mill operations conducted by or for you.

The limit of insurance or any deductible applicable to the "property damage" applies to this coverage. This provision shall not operate to increase the limit of our liability.

### 2) ADDITIONAL EXCLUSIONS

This insurance does not apply to:

a)      Personal property in your possession for sale, storage, processing, safekeeping or repair;
b)      Any person other than you or your employees while vehicles used in logging or mill operations are being loaded or unloaded..

### 3) DEDUCTIBLE

a)      Our obligation under the Property Damage Liability Coverage to pay damages on your behalf applies only to the amount of damages in excess of USD 1,000,000 each occurrence.

        The limits of insurance applicable to "each occurrence" for such coverage will be reduced by the amount of such deductible. "Aggregate" limits for such coverage shall not be reduced by the application of such deductible amount.

b)      The deductible applies to all damages because of "property damage" as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damage because of that "occurrence".

c)      We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

d)      The terms of the insurance apply irrespective of the application of the deductible amount.

### 4) WARRANTIES

You warrant that:

a)      Slash shall be burned only at such times and under such conditions as the proper State or Federal officials may approve, direct or provide;

b)      All felling and bucking of timber, the operation of logging equipment and the loading and unloading of logs shall be completely suspended when such suspensions are directed by the proper State or Federal officials.

        A breach of the above warranties shall render the insurance afforded hereunder null and void for the period of the breach, unless such breach is beyond your control.

All other terms, clauses and conditions remain unaltered.



UMR: B0180ME2017007

**EMPLOYEE BENEFITS LIABILITY ENDORSEMENT**

**Retroactive date: 24th June 2018**

**The insurance under this endorsement provides claims made coverage. Except as otherwise provided, such coverage applies only to claims first made against the insured during the policy period. Please read this insurance carefully.**

The Company agrees to pay on behalf of the **insured**, all sums which the named **insured** shall become legally obligated to pay for damages because of loss or injury sustained by an employee, former employee, or the beneficiaries or legal representatives thereof and arising out of any act, negligence, error or omission of the named **insured**, or any other person, persons or organization for whose acts the named **insured** is legally liable, in the **administration of employee benefit programs** as defined in this endorsement, provided that any claim made therefor is first made against the **insured** during the policy period.

**Definitions**

A.      The term **insured**, wherever used in this endorsement, means the named **insured** and every partner, officer, director, shareholder and employee of the **insured**, authorized by the **insured** to administer the **employee benefit programs**;

B.      The term **employee benefit programs** means: group life insurance, group health insurance, group dental insurance, group automobile insurance, group homeowners insurance, educational tuition reimbursement plans, individual retirement account (IRA) plans, Internal Revenue Code Section 401(K) plans and amendments thereto, profit sharing plans, pension plans, employee investment subscription plans, workers compensation, unemployment insurance, social security, disability benefits insurance or travel, savings or vacation plans;

C.      The term **administration of employee benefit programs**, wherever used in this endorsement, and when duly authorized by the named **insured**, includes but is not limited to:

  i)        giving counsel to employees with respect to the **employee benefit programs**;
  ii)       interpreting the **employee benefit programs**;
  iii)      handling of records in connection with the **employee benefit programs**;
  iv)      effecting enrollment, termination and cancellation of employees under the **employee benefit programs**;

D.      The term "Declarations" means the Declarations which are a part of this insurance.

**Exclusions**

This insurance does not apply to:

A.      any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation;

B.      **bodily injury** to or sickness, or death, of any person or to injury to or destruction of any tangible property including the loss of use thereof;

C.      any claim for failure of performance of contract by any company, or any other party, including the **insured**, obligated to afford the benefits;

D.      any claim based upon the **insured's** failure to comply with any law concerning workers' compensation, unemployment insurance, social security or disability benefits;

E.      any claim based upon failure of stock, bonds or other securities to perform as represented by an **insured**, including but not limited to their failure to produce financial gain, profit or growth;

F.      advice given by an **insured** to an employee to participate or not to participate in any stock subscription plan;

G.      any claim arising out of circumstances which the **insured** had knowledge of or could reasonably foresee as circumstances which might result in a claim or **suit** prior to the inception date of this insurance.

DocuSign Envelope ID: 84B5D2DC-5086-43AF-BBCB-53B4DE91414E



**UMR: B0180ME2017007**

**Limit of Liability**

As stated in the Declarations.

All other terms, exclusions, conditions, definitions and limitations otherwise remain unchanged.



UMR: B0180ME2017007

**STOP GAP – EMPLOYERS LIABILITY COVERAGE ENDORSEMENT - WASHINGTON**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**IN RESPECTS TO ELECTRON AND BLACK CREEK PROJECTS ONLY**

**SCHEDULE**

**Limits Of Insurance**

Bodily Injury By Accident USD 1,000,000 Each Accident
Bodily Injury By Disease USD 1,000,000 Aggregate Limit
Bodily Injury By Disease USD 1,000,000 Each Employee

Deductible USD 100,000

A. The following is added to Section I. Coverages:

COVERAGE. STOP GAP. EMPLOYERS LIABILITY

**1. Insuring Agreement**

a.     We will pay those sums that the insured becomes legally obligated by Washington Law to pay as
       damages because of "bodily injury by accident" or "bodily injury by disease" to your "employee" to which
       this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking
       those damages. However, we will have no duty to defend the insured against any "suit" seeking
       damages to which this insurance does not apply. We may, at our discretion, investigate any accident
       and settle any claim or "suit" that may result. But:

       (1)    The amount we will pay for damages is limited as described in the limits of insurance; and
       (2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the
              payment of judgments or settlements under this coverage.

              No other obligation or liability to pay sums or perform acts or services is covered unless explicitly
              provided for under Supplementary Payments.

b.     This insurance applies to "bodily injury by accident" or "bodily injury by disease" only if:

       (1)    The:
              (a)    "Bodily injury by accident" or "bodily injury by disease" takes place in the "coverage
                     territory";
              (b)    "Bodily injury by accident" or "bodily injury by disease" arises out of and in the course of
                     the injured "employee's" employment by you; and
              (c)    "Employee", at the time of the injury, was covered under a worker's compensation policy
                     and subject to a "workers compensation law" of Washington; and

       (2)    The:
              (a) "Bodily injury by accident" is caused by an accident that occurs during the policy period; or
              (b) "Bodily injury by disease" is caused by or aggravated by conditions of employment by you
              and the injured "employee's" last day of last exposure to the conditions causing or aggravating
              such "bodily injury by disease" occurs during the policy period.

c.     The damages we will pay, where recovery is permitted by law, include damages:

       (1)    For:
              (a)    Which you are liable to a third party by reason of a claim or "suit" against you by that
                     third party to recover the damages claimed against such third party as a result of injury
                     to your "employee";
              (b)    Care and loss of services; and
              (c)    Consequential "bodily injury by accident" or "bodily injury by disease" to a spouse, child,
                     parent, brother or sister of the injured "employee"; provided that these damages are the

DocuSign Envelope ID: 84B5D2DC-5086-43AF-BBCB-53B4DE91414E



**UMR: B0180ME2017007**

direct consequence of "bodily injury by accident" or "bodily injury by disease" that arises out of and in the course of the injured "employee's" employment by you; and

(2)    Because of "bodily injury by accident" or "bodily injury by disease" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

## 2. Exclusions

This insurance does not apply to:

### a. Intentional Injury

"Bodily injury by accident" or "bodily injury by disease" intentionally caused or aggravated by you, or "bodily injury by accident" or "bodily injury by disease" resulting from an act which is determined to have been committed by you if it was reasonable to believe that an injury is substantially certain to occur.

### b. Fines Or Penalties

Any assessment, penalty, or fine levied by any regulatory inspection agency or authority.

### c. Statutory Obligations

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### d. Contractual Liability

Liability assumed by you under any contract or agreement.

### e. Violation Of Law

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your "executive officers".

### f. Termination, Coercion Or Discrimination

Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured.

### g. Failure To Comply With "Workers Compensation Law"

"Bodily injury by accident" or "bodily injury by disease" to an "employee" when you are:

(1)    Deprived of common law defenses; or
(2)    Otherwise subject to penalty; because of your failure to secure your obligations or other failure to    comply with any "workers compensation law".

### h. Violation Of Age Laws Or Employment Of Minors

"Bodily injury by accident" or "bodily injury by disease" suffered or caused by any person:

(1)    Knowingly employed by you in violation of any law as to age; or
(2)    Under the age of 14 years, regardless of any such law.



**i. Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

| | |
|---|---|
| **(1)** | The Federal Employer's Liability Act (45 USC Section 51-60); |
| **(2)** | The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173); |
| **(3)** | The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950); |
| **(4)** | The Outer Continental Shelf Lands Act (43 USC Section 1331-1356); |
| **(5)** | The Defense Base Act (42 USC Sections 1651-1654); |
| **(6)** | The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942); |
| **(7)** | The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872); |
| **(8)** | Any other workers compensation, unemployment compensation or disability laws or any similar law; or |
| **(9)** | Any subsequent amendments to the laws listed above. |

**j. Punitive Damages**

Multiple, exemplary or punitive damages.

**k. Crew Members**

"Bodily injury by accident" or "bodily injury by disease" to a master or member of the crew of any vessel or any member of the flying crew of an aircraft.

**B.** The **Supplementary Payments** provisions apply to Coverage . Stop Gap Employers Liability as well as to Coverages **A** and **B**.

**C.** For the purposes of this endorsement, **Who Is An Insured,** is replaced by the following:

If you are designated in the Declarations as:

| | |
|---|---|
| **1.** | An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner. |
| **2.** | A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business. |
| **3.** | A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers. |
| **4.** | An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders. |

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D.** For the purposes of this endorsement, **Limits Of Insurance,** is replaced by the following:

| | |
|---|---|
| **1.** | The Limits of Insurance shown in the Schedule of this endorsement and the rules below fix the most we will pay regardless of the number of: |
| | **a.** Insureds; |
| | **b.** Claims made or "suits" brought; or |
| | **c.** Persons or organizations making claims or bringing "suits". |
| **1.** | The "Bodily Injury By Accident" . Each Accident Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance because of "bodily injury by accident" to one or more  "employees" in any one accident. |



**3.** The "Bodily Injury By Disease" . Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all damages covered by this insurance and arising out of "bodily injury by disease", regardless of the number of "employees" who sustain "bodily injury by disease".

**4.** Subject to Paragraph **D.3.** of this endorsement, the "Bodily Injury By Disease" . Each "Employee" Limit shown in the Schedule of this endorsement is the most we will pay for all damages because of "bodily injury by disease" to any one "employee".

The limits of the coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E.** For the purposes of this endorsement, **Duties In The Event Of Occurrence, Claim Or Suit** of the Conditions Section is deleted and replaced by the following:

**2.** **Duties In The Event Of Injury, Claim Or Suit**
  **a.** You must see to it that we or our agent are notified as soon as practicable of a "bodily injury by accident" or "bodily injury by disease" which may result in a claim. To the extent possible, notice should include:

  **(1)** How, when and where the "bodily injury by accident" or "bodily injury by disease" took place;
  **(2)** The names and addresses of any injured persons and witnesses; and
  **(3)** The nature and location of any injury.

  **b.** If a claim is made or "suit" is brought against any insured, you must:

  **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

  **(2)** Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

  **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the injury, claim, proceeding or "suit";
  **(2)** Authorize us to obtain records and other information;
  **(3)** Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or defense against the "suit";
  **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and
  **(5)** Do nothing after an injury occurs that would interfere with our right to recover from others.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**F.** For the purposes of this endorsement, **Definitions** Section is replaced by the following:

"Coverage territory" means:

  **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;
  **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or
  **c.** All other parts of the world if the injury or damage arises out of the activities of a person whose home is in the territory described in **a.** above, but who is away for a short time on your business;

DocuSign Envelope ID: 84B5D2DC-5086-43AF-BBCB-53B4DE91414E



**UMR: B0180ME2017007**

provided the insured's responsibility to pay damages is determined in the United States (including its territories and possessions), Puerto Rico, or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

**G.** The following are added to the **Definitions** Section:

    **1.**    "Workers Compensation Law" means the Workers Compensation Law and any Occupational Disease Law of Washington. This does not include provisions of any law providing non-occupational disability benefits.

    **2.**    "Bodily injury by accident" means bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not "bodily injury by accident" unless it results directly from "bodily injury by accident".

    **3.**    "Bodily injury by disease" means a disease sustained by a person, including death. "Bodily injury by disease" does not include a disease that results directly from an accident.

**H.** For the purposes of this endorsement, the definition of "bodily injury" does not apply.

All other terms, clauses and conditions remain unaltered.



**UMR: B0180ME2017007**

## SANCTION LIMITATION AND EXCLUSION CLAUSE

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA 3100
15 September 2010

All other terms, clauses and conditions remain unaltered.



**UMR: B0180ME2017007**

## CALIFORNIA COMPLAINTS NOTICE

To request assistance or make an initial complaint, you should contact RSG Underwriting Managers, LLC dba Power Energy Risk (PerSE) at:

**RSG Underwriting Managers, LLC dba Power Energy Risk (PerSE)**
**225 West 34th Street, 14 Penn Plaza, Suite 1510, New York, NY 10122**
**United States of America**

In the alternative, or if you are dissatisfied with the resolution of your complaint by the above party, you may wish to contact the Lloyd's Complaints Department at:

**Lloyd's Complaints Department**
**c/o Lloyd's America Inc.**
**25 West 53rd Street, 14th Floor**
**New York, NY 10019**
**USA**

Phone:  1-844-849-7828
Fax:      1-800-481-3121
Email:   complaints@lloyds.com

The California Department of Insurance should be contacted only after discussions with the insurer, its agent, or representative, have failed to produce a satisfactory resolution.  You may contact the California Department of Insurance to obtain information on your rights or make a complaint at:

**Consumer Hotline**
**1-800-927-4357 (HELP)**

**TDD Number**
**1-800-482-4833 (TTY)**

**California Department of Insurance**
**Consumer Services Division**
**300 South Spring Street, South Tower**
**Los Angeles, CA 90013**

**LMA9136**
**08 December 2016**

DocuSign Envelope ID: 84B5D2DC-5086-43AF-BBCB-53B4DE91414E



**UMR: B0180ME2017007**

## CALIFORNIA SURPLUS DISCLOSURE STATEMENT

### IMPORTANT NOTICE

1.  The insurance policy that you are applying to purchase is being issued by an insurer that is not licensed by the State of California. These companies are called "nonadmitted" or "surplus line" insurers.

2.  The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.

3.  The insurer does not participate in any of the insurance guarantee funds created by California law. Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.

4.  The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800-927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer. You may also visit the NAIC's internet website at www.naic.org. The NAIC – the National Association of Insurance Commissioners – is the regulatory support organization created and governed by the chief insurance regulators in the United States.

5.  Foreign insurers should be licensed by a state in the United States and you may contact that state's department of insurance to obtain more information about that insurer. You can find a link to each state from the NAIC internet website: https://naic.org/state_web_map.htm.

6.  For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers. Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.

7.  California maintains a "List of Approved Surplus Line Insurers (LASLI)." Ask your agent or broker if the insurer is on that list, or view that list at the internet website of the California Department of Insurance: www.insurance.ca.gov/01-consumers/120-company/07- lasli/lasli.cfm.

8.  If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive    this disclosure form and a request for your signature until after coverage became effective, you have the right to  cancel this policy within five days of receiving this disclosure. If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.

**LMA9099B**
**10 December 2019**

### CALIFORNIA SURPLUS LINES NOTICE 2

This insurance is issued pursuant to the California Insurance Code, Sections 1760 through 1780, and is placed in an insurer or insurers not holding a Certificate of Authority from or regulated by the California Insurance Commissioner.

**LMA9030**
**01 September 2013**

DocuSign Envelope ID: 84B5D2DC-5086-43AF-BBCB-53B4DE91414E



UMR: B0180ME2017007

**CALIFORNIA SURPLUS LINES NOTICE 1**

**IMPORTANT NOTICE**

1.  The insurance policy that you have purchased is being issued by an insurer that is not licensed by the State of California. These companies are called "nonadmitted" or "surplus line" insurers.

2.  The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.

3.  The insurer does not participate in any of the insurance guarantee funds created by California law. Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.

4.  The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800-927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer. You may also visit the NAIC's internet website at www.naic.org. The NAIC – the National Association of Insurance Commissioners – is the regulatory support organization created and governed by the chief insurance regulators in the United States.

5.  Foreign insurers should be licensed by a state in the United States and you may contact that state's department of insurance to obtain more information about that insurer. You can find a link to each state from the NAIC internet website: https://naic.org/state_web_map.htm.

6.  For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers. Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.

7.  California maintains a "List of Approved Surplus Line Insurers (LASLI)." Ask your agent or broker if the insurer is on that list, or view that list at the internet website of the California Department of Insurance: www.insurance.ca.gov/01-consumers/120-company/07-_lasli/lasli.cfm.

8.  If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure. If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.

**LMA9098B**
**10 December 2019**

DocuSign Envelope ID: 84B5D2DC-5086-43AF-BBCB-53B4DE91414E



UMR: B0180ME2017007

## INSTITUTE SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters severally subscribing this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this insurance relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to remove an action to a United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any state therein.

Subject to the Underwriters' rights set forth above:

(a)     It is further agreed that the Assured may serve process upon any senior partner in the firm of:

> **Lloyd's America, Inc.**
> **Attention: Legal Department**
> **280 Park Avenue, East Tower, 25th Floor**
> **New York, NY 10017**

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

(b)     The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon the Underwriters' behalf in the event such a suit shall be instituted.

(c)     The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account.  For the purpose of suit as herein provided the word Assured includes any mortgagee under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgagee.

(d)     Further, pursuant to any statute of any state, territory or district of the United States of America which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office (the Officer), as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the Officer is authorized to mail such process or a true copy thereof.

**If this clause is attached to a contract of reinsurance the terms insurance and Assured shall mean reinsurance and Reassured respectively.**

1/11/92
CL.355  © Copyright The Institute of London Underwriters

**All other terms and conditions of this policy remain unaltered.**

http://PortalGXB/Sites/RKH_20/Live/Documents/Policy/PlacingSlip/ME2017007 PlacingSlip_ME.docx

DocuSign Envelope ID: 84B5D2DC-5086-43AF-BBCB-53B4DE91414E



UMR: B0180ME2017007

# Information Section:

The following Information, as per PerSE emails dated 8th June 2020, was provided to insurer(s) to support the assessment of the risk at the time of underwriting.

2020 Underwriting Submission.

There are 4 projects to be covered, details as follows:-

1)      **Smith Creek Hydro Project**

- Located on the Kootenai River in Northern Idaho, 5 miles from the Canadian border
- Site address: 22176 Westside Rd, Bonners Ferry, Idaho, 83805
- Constructed in 1989
- 75 foot long, 8 foot high diversion dam
- 5.3 mile, 6-foot diameter steel penstock that carries water from the diversion dam to the power plant
- Power plant contains 2 horizontal shaft turbines, each driving a synchronous 18 MW generator, with a third turbine driving a 2.1 MW generator
- 30-mile transmission line that terminates at the Bonner's Ferry Substation
- Revenues = $2.1m
- Annual Production = 90,000,000 (KWH)

2)      **Electron Hydroelectric Project**

- Located on the Puyallup River in Pierce County, Washington, approx. 25 miles SE of Tacoma
- Site address: 19318 Electron Road East, Pierce County, Orting, Washington, 98360
- Constructed in 1904, and rebuilt in 1940s and again in 1985.
- Funnels water via 10-mile span of wooden flume
- Cross section of 8x8 feet can supply up to 400 cubic feet of water per second to the turbines in the powerhouse.
- Generates 26 MW of electricity
- Revenues = $7.8m
- Annual Production = 128,000,000 (KWH)

3)      **Black Creek Hydroelectric Power**

- Located in North Bend, Washington
- Site address: W, King County, North Bend, Washington, 98045
- Constructed in 1988, first power transmitted in 1994
- Consists of a diversion and intake structure, a 6,310 foot long pipeline/penstock, and a powerhouse containing a single 3.7 MW generating unit
- Operated on a run-of-river basis, generating electrical energy from available stream flow
- Project only operates when flows in the Black Creek exceed the minimum instream flow requirement of 5.4 cfs, plus the minimum plant requirement of 4 cfs.
- Revenues = $1m
- Annual Production = 10,000,000 (KWH)

4)      **P-6780 Deadwood Creek Project Hydro Project**

- Located in Strawberry Valley, California
- Site address: Upper end of New Bullards Bar Reservoir, Yuba County, Strawberry Valley, California, 95981
- Another run-of-river facility, construction began in 1989 and power generation began in 1993.
- Generating capacity: 1.96 MW
- Revenues = $150,000
- Annual Production = 3,300,000 (KWH)

DocuSign Envelope ID: 84B5D2DC-5086-43AF-BBCB-53B4DE91414E



**UMR: B0180ME2017007**

### Questions & Answers

- Who is the O&M contractor and what limits of insurance are they required to hold? **Varies per facility but generally facility staff perform the O&M.**
- Details of any subcontractors used and their relevant experience. **Varies per facility but generally subcontractors are very infrequently utilised.**
- Do contractors name and waive the owner in their contracts? **Yes for all, where applicable.**
- Details of any T&D lines? Length? Split between over and underground? **15.3 miles underground. 30.8 miles overground (across all sites)**
- Who is responsible for the vegetation management and what limits do they hold? **When required, it is performed by the on-site O&M staff.**
- Any owned autos? **4 – all PPVs / Light Trucks**
- Any employees? **25**
- Loss history? **No losses during ownership period (see below for dates ownership began)**
- Surrounding third party property – **Google Earth images attached per RKH email dated 3rd May 2018.**
- Copies of most recent external audits/surveys? **None available from GCube.**

### Additional Information

- The weather is typically rainy all year round; wildfire has never been an issue.
- The owners are engineers that specialize in design/build of hydro diversion dams for electric utilities. They purchased these facilities from the utility they built them for.
- Their relays are set to protect the equipment.  They are not set to keep the power flowing.
- These are diversion dams, not your typical block the flow of the river dam.
- The overhead lines also have a distribution circuit for Puget Sound electric attached.  They monitor all vegetation management.
- Black Creek, Smith and Deadwood are offline two months each summer for maintenance and repairs. Electron is year round due to glacial runoff being plentiful.
- FERC does inspect the dams except for Electron, which is not required to be inspected.
- All facilities are inspected daily and have security cameras with remote access.
- Transformers are gas tested.
- They monitor 1000 data points at all times.

- **Mobile Equipment –** The Insured has 6 units of Mobile Equipment (2 dump trucks, 2 excavators & 2 rail transport cars). Valtec's facilities and lines sometimes require going onto other land to get to. Typically this is timber company land. This policy covers liability arising out of use of mobile equipment off-site.

- **Stop Gap Washington EL Endorsement –** Washington is a monopolistic state for WC, so the coverage comes from the compulsory state fund.

### Ownership periods

Black Creek Hydro – 15th January 2010
Electron Hydro – 14th November 2014
Smith Creek Hydro – 29th June 2016
Hydro Sierra (Deadwood Project) – 1st March 2017



UMR: B0180ME2017007

# Security Details

**INSURER'S**
**LIABILITY:**

<u>LMA3333</u>
Dated 21 June 2007

**Insurer's liability several not joint**
The liability of an insurer under this contract is several and not joint with other insurers party to this contract. An insurer is liable only for the proportion of liability it has underwritten. An insurer is not jointly liable for the proportion of liability underwritten by any other insurer. Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**
Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed"). In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together). A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line". The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

**ORDER HEREON:**    100% of 100%

**BASIS OF WRITTEN**
**LINES:**

Percentage of whole.
Lines Clause NMA 2419

**SIGNING**
**PROVISIONS:**

In the event that the written lines hereon exceed 100% of the order, any lines written "to stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any of the insurers.

DocuSign Envelope ID: 84B5D2DC-5086-43AF-BBCB-53B4DE91414E



UMR: B0180ME2017007

However:

a)    in the event that the placement of the order is not completed by the commencement date of the period of insurance then all lines written by that date will be signed in full;

b)    the Insured may elect for the disproportionate signing of insurers lines, without further specific agreement of insurers, providing that any such variation is made prior to the commencement date of the period of insurance, and that lines written "to stand" may not be varied without the documented agreement of those insurers.

c)    the signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of insurance, by the documented agreement of the (re)insured and all (re)insurers whose lines are to be varied.  The variation to the contracts will take effect only when all such (re)insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.

Final signed lines to be advised each participating underwriter hereon.

**SIGNED LINES**

**WRITTEN LINES**
In a co-insurance placement, following (re)insurers may, but are not obliged to, follow the premium charged by the lead (re)insurer.

(Re) insurers may not seek to guarantee for themselves terms as favourable as those which others subsequently achieve during the placement.



DocuSign Envelope ID: 84B5D2DC-5086-42AF-BBCB-53B4DE91414E



UMR: B0180ME2017007

# Contract Administration and Advisory Sections:

## Subscription Agreement Section

**SLIP LEADER:** Thomas Miller Specialty Offshore

**BUREAU LEADER:** Lloyd's Syndicate CSL 1084 and Markel International Insurance Company Limited

**BASIS OF AGREEMENT TO CONTRACT CHANGES:** GUA (October 2001) Incorporating GUA Marine Energy Schedule (June 2003).

**OTHER AGREEMENT PARTIES FOR CONTRACT CHANGES, FOR PART 2 GUA CHANGES ONLY:** Part 2 changes may be agreed by Slip Leader only.

The period referred to in paragraph 1.14 (Extensions to premium payment condition/warranty) of the Non-Marine Schedule October 2001 is extended from 5 to 14 days.

When required to do so by the Slip Leader only, RKH Specialty will provide details of agreed endorsements to following Insurers. If required, electronic transmission may be used by RKH Specialty for providing details of agreed endorsements, contractual changes or information to following Insurers as necessary.

Signing slip and/or signing slip endorsements to be agreed by slip leader only.

Amendments to final going-in values, premium and basis of coverage to be agreed by the Slip Leader only.

Net equivalent downwards to be agreed slip leader only.

**AGREEMENT PARTIES FOR CONTRACT CHANGES, FOR THEIR PROPORTION ONLY:** None.

**BASIS OF CLAIMS AGREEMENT:** As specified under the **Claims Agreement Parties** to be managed in accordance with:

i) The SINGLE CLAIMS AGREEMENT PARTY ARRANGEMENTS (as set out in LMA 9150) for claims or circumstances assigned as Single Claims Agreement Party Claims (SCAP Claims) or, where it is not applicable, then the following shall apply as appropriate

ii) The Lloyd's Claims Scheme (Combined), or as amended or any successor thereto.

iii) IUA claims agreement practices.

iv) The practices of any company(ies) electing to agree claims in respect of their own participation.

The applicable arrangements (scheme, agreement or practices) will be determined by

DocuSign Envelope ID: 84B5D2DC-5086-43AF-BBCB-53B4DE91414E



**Page 33 of 36**

**UMR: B0180ME2017007**

the rules and scope of said arrangements and should be referred to as appropriate.

**CLAIMS AGREEMENT PARTIES:**

A.   Claims falling within the scope of the LMA 9150 Single Claims Agreement Party Arrangements to be agreed by Slip Leader only on behalf of all (re)insurers (1) subscribing to this Contract on the same contractual terms (other than premium and brokerage) and (2) to these Arrangements.

For the purposes of calculating the Threshold Amount, the sterling rate on the date that a financial value of the claim is first established by the Slip Leader shall be used and the rate of exchange shall be the Bank of England spot rate for the purchase of sterling at the time of the deemed conversion.

B.   For all other claims:

i)   <u>For Lloyd's syndicates</u>
The leading Lloyd's syndicate and, where required by the applicable Lloyd's Claims Scheme, the second Lloyd's syndicate and/or the Scheme Service Provider.

The second Lloyd's Syndicate is:   _____, if this is not completed, and there is Lloyd's participation of more than one Lloyd's syndicate, then the 2nd Lloyd's Syndicate which appears on the Security Details section shall be 'the second Lloyd's Syndicate'.

ii)   <u>For IUA Companies</u>
Those companies acting in accordance with the IUA claims agreement practices, excepting those that may have opted out via iii) below.

iii)   Those companies that have specifically elected to agree claims in respect of their own participation.   *None, unless completed here.*

iv)   <u>For Non Bureau Companies</u>
All other subscribing insurers that are not party to the Lloyd's/IUA claims agreement practices, each in respect of their own participation.

**CLAIMS ADMINISTRATION:**

RKH Specialty to enter claim advices into the relevant market CLASS system.  All Underwriters to use their respective market CLASS system for claims agreement. Electronic transmission to be used by RKH Specialty for distribution of claim file information to Underwriters in support of the CLASS entry.

Underwriters will respond to claims matters to RKH Specialty via CLASS (unless otherwise specified here).

Claims settlement to be remitted to RKH Specialty (unless otherwise specified here) within 7 working days after agreement of claim by Slip Leader and submission of collection to market(s).

Payment of claims to client to be via RKH Specialty (unless otherwise specified here).

**RULES AND EXTENT OF ANY OTHER DELEGATED CLAIMS AUTHORITY:**

None.

DocuSign Envelope ID: 84B5D2DC-F086-43AF-BBCB-53B4DE91414E



**Page 34 of 36**

**UMR: B0180ME2017007**

| | |
|---|---|
| **EXPERT(S) FEES COLLECTION:** | RKH Specialty do not collect fees. |
| **SETTLEMENT DUE DATE:** | 30th August 2020 |
| **ADJUSTMENT PREMIUM PERIOD OF CREDIT:** | As soon as practicable after expiry of the Policy. |

**BUREAU ARRANGEMENTS:**
Xchanging Ins-sure Services are authorised to sign premium from individual cedants / territories separately as and when received by RKH Specialty.

Agree to annual premium resigning, alternatively premium payable by additional premium to first year of account in respect of periods in excess of twelve months.

If it is agreed that the premium is to be paid in installments the second and subsequent installment(s) to be taken down as additional premium(s).

Premium payment requirements deemed met by presentation of premium / accounts to Ins-sure or Underwriters hereon as applicable on or before the Settlement Due Date(s) which deemed to be in compliance with Settlement Due Date(s) and will therefore not be recorded as a late signing or payment.

Where Settlement Due Date (SDD) or any Premium Payment Warranty (PPW) or Premium Payment Condition (PPC) due date falls on a weekend or public holiday, presentation to Xchanging Ins-sure Services or Underwriters hereon as applicable on the next working day will be deemed in compliance with SDD, PPW or PPC.

Where a Premium Payment Condition or Premium Payment Warranty requires payment by a date which is later than the Settlement Due Date, the Settlement Due Date is deemed to have been amended and shall be the same as the Premium Payment Condition or Premium Payment Warranty due date.

In the event the Settlement Due Date (as detailed in Subscription Agreement) and/or the Risk Code and/or Year of Account (as detailed in Fiscal and Regulatory) differ from those shown in the Security Schedule attached hereto, the information recorded in the Security Schedule shall take precedence.

**NON-BUREAU ARRANGEMENTS:**  None.

DocuSign Envelope ID: 84B5D2DC-508G-43AF-BBGB-53B4DE91414E



**UMR: B0180ME2017007**

# Fiscal and Regulatory Section

| | |
|---|---|
| **TAX PAYABLE BY INSURER(S):** | None applicable. |
| **COUNTRY OF ORIGIN:** | United States of America. |
| **OVERSEAS BROKER:** | RSG Underwriting Managers, LLC dba Power Energy Risk (PerSE)<br>225 West 34th Street<br>14 Penn Plaza<br>Suite 1510<br>New York, NY 10122<br>United States of America |
| **SURPLUS LINES BROKER:** | RSG Underwriting Managers, LLC dba RSG Insurance Services, LLC<br>Prudential Plaza, 180 N. Stetson Avenue, Suite 4600,<br>Chicago, IL 60601<br>Licence Number – 0E50879 |
| **STATE OF FILING:** | California |
| **US CLASSIFICATION:** | US Surplus Lines |
| **ALLOCATION OF PREMIUM TO CODING:** | 99% EB<br>1% 7T |
| **REGULATORY CLIENT CLASSIFICATION.:** | Large Risk. |

DocuSign Envelope ID: 84B5D2DC-F086-43AF-BBCB-53B4DE91414E



**UMR: B0180ME2017007**

# Broker Remuneration & Deductions Section

**FEE PAYABLE BY
CLIENT:**                   No fee payable to RKH Specialty.

**TOTAL BROKERAGE:**        25.773968371%

**OTHER DEDUCTIONS
FROM PREMIUM:**             None.

DocuSign Envelope ID: 84B5D2DC-E086-43AF-BBCB-53B4DE91414E

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

DocuSign Envelope ID: 84B5D2DC-508C-43AF-BBCB-53B4DE91414E

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012  **CG 00 01 04 13**

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

DocuSign Envelope ID: 84B5D2DC-508C-43AF-BBCB-53B4DE91414E

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

#### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

#### b. Excess Insurance

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

#### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

     **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

     **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

     **(1)** Power cranes, shovels, loaders, diggers or drills; or

     **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

     **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

     **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

**Endorsement 1 to Section 1**

**SECTION 1 – COVERAGES 2. Exclusions a. Expected or Intended Injury** is amended to read as follows:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

All other terms, clauses and conditions remain unaltered.

**Endorsement 2 to Section 1**

**SECTION I – COVERAGES 2. Exclusions e. Employer's Liability Item (1)** is amended to read as follows;

"Bodily injury" to:

**(1)**   An "employee" of the insured arising out of and in the course of:

   **(a)** Employment by the insured; or

   **(b)** Performing duties related to the conduct of the insured's business;

   Notwithstanding the above Underwriters agree to indemnify the insured for amounts for which it shall have become liable to pay and shall have paid on account of investigation, defence and indemnity as respects its responsibilities, if any, to third parties by virtue of defence and indemnify obligations assumed under written contract or agreement and arising from accidental death of or bodily or personal injury to or illness of any employee (s) of the insured, except insofar as same may arise from occupational disease.

All other terms, clauses and conditions remain unaltered.

**Endorsement 3 to Section 1**

**NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Exclusion **f.** under Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** is deleted and replaced by the following:

**f. Pollution**

1) Bodily injury or property damage arising out of the actual or threatened discharge, dispersal, seepage, release or escape of pollutants;

2) Any loss, cost or expense, including but not limited to costs of investigation or attorney's fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

As used in this exclusion, pollutants means any solid, liquid, gaseous or thermal contaminant. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

**However, this exclusion does not apply to bodily injury or property damage arising out of:**

1) Any discharge, dispersal, seepage, migration, release, or escape directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism, or malicious mischief, riot and civil commotion, collision, or upset of a motor vehicle, mobile equipment or aircraft, automatic sprinkler leakage, flood, watercraft and quake.

2) The products-completed operations hazard; or

3) Any discharge, dispersal, seepage, migration, release or escape of pollutants that meets all of the following conditions.

   a. It was accidental and neither expected nor intended by the insured. The condition would not serve to deny for coverage for a specific incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the insured to mitigate or avoid a situation where substantial third party bodily injury or property damage could occur; and

   b. It was demonstrable as having commenced on a specific date during the term of this policy; and

   c. Its commencement became known to the named insured within 20 calendar days; and

   d. Its commencement was reported in writing to you within 80 calendar days of becoming known to the finance department; and

   e. Reasonable effort was expended by the named insured to terminate the situation as soon as conditions permitted.

However, nothing contained in this provision shall operate to provide any coverage with respect to:

   a. Any site or location principally used by the insured, or by others on the insured's behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

   b. Any fines or penalties;

   c. Any clean up costs ordered by the superfund program, or any federal, state or local governmental authority. However, this specific exclusion c. shall not serve to deny

coverage for third party clean up costs otherwise covered by this endorsement simply because of the involvement of a governmental authority;

d.   Acid rain;

e.   Clean up, removal, containment, treatment, detoxification or neutralization of pollutants situated on premises the insured owns, rents or occupies at the time of the actual, discharge, dispersal, seepage, migration, release or escape of said pollutants.

This exclusion shall not apply to third party property (being property not owned, leased, rented or occupied by the insured) over which the insured has right of way in respect of its pipelines shall not be considered being in the care, custody or control of the insured.

All other terms, clauses and conditions remain unaltered.

**Endorsement 4 to Section 1**

**SECTION II – WHO IS AN INSURED** is amended to read:

1.  "Insured" means:

    **a.**  The "insured";

    **b.**  If you are designated in the Declarations as:

        **(1)**  An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner;

        **(2)**  A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business;

        **(3)**  A limited liability company, you are an "insured". Your members are also "insureds", but only with respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers;

        **(4)**  An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your executive officers and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders;

        **(5)**  A trust, you are an "insured". Your trustees are also "insureds", but only with respect to their duties as trustees;

    **c.**  Your "employees" other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

    **d.**  Your "volunteer workers" only while performing duties related to the conduct of your business;

    **e.**  Any person (other than your "employee" or "volunteer worker") or organization while acting as your real estate manager;

    **f.**  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

    **g.**  Any person or organization, other than the "named insured", included as an additional insured under "scheduled underlying insurance", but not for broader coverage than would be afforded by such "scheduled underlying insurance".

    Notwithstanding any of the above:

    **(1)**  No person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not designated as a "named insured" in Item 1. of the Declarations; and

**Endorsement 5 to Section 1**

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

Item **4 Other Insurance a. Primary Insurance** is subject to the **PRIMARY INSURANCE ENDORSEMENT** CGU12W as follows:-

Where you are named as an "additional insured" on the policy(ies) of others, this insurance shall only apply in excess of and shall not be contributory with other said policy(ies).

Notwithstanding the above or any other clauses contained within this insurance where required by written contract this insurance shall be primary to any other valid and collectable insurance.


CGU12W



All other terms, clauses and conditions remain unaltered.

**Endorsement 6 to Section 1**

**SUPPLEMENTARY EXCLUSIONS A**

NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS INSURANCE, THIS INSURANCE IS SUBJECT TO THE FOLLOWING ADDITIONAL EXCLUSIONS AND IT DOES NOT APPLY TO:-

1.     any liability of the insured to any party arising out of "bodily injury" and/or "personal injury" to or illness or death of any "employee" of the insured, including without limiting the generality of the foregoing any such liability for (i) indemnity or contribution whether in tort, contract or otherwise and (ii) any liability of such other parties assumed under contract or agreement.

2.     any liability to any "leased employee" however this exclusion does not apply to Employers Liability if the person is enrolled under the insured's Workers' Compensation Program.  "Leased employee" means a person leased to the insured by a leasing firm under a written contract between the insured and the leasing firm to perform duties related to the conduct of the insured's business.

3.     any liability for loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by sub-surface operations of the insured.

4.     for any fines or penalties.

5.     any act, negligence, error or omission, malpractice or mistake arising out of Professional Services committed or alleged to have been committed by or on behalf of the insured in the conduct of any of the insured's business activities.  Professional Services means the preparation or approval of audits, accounts, maps, plans, opinions, reports, surveys, designs or specifications and supervisory, inspection, engineering, or data processing services.

6.     any liability directly or indirectly caused by or arising out of asbestos, tobacco, coal dust, mold, chromium copper arsenate; Exterior Insulation and Finish System (EIFS); polychlorinated biphenyls, silica, benzene, lead, Methyl Tertiary Butyl Ether/Ethyl; talc, dioxin, pesticides or herbicides, electromagnetic fields, pharmaceutical or medical drugs/products/ substances/devices; or any substance containing such material or any derivate thereof.

7.     any liability in the nature of hearing loss or damage, human immunodeficiency virus or acquired immune deficiency syndrome, cumulative trauma disorder, repetitive motion or strain injury, carpal tunnel syndrome.

8.     any liability arising out of the insured's failure to supply or from fluctuations in supply of any oil, gas, electricity, chemicals, products, materials or services.

9.     any liability arising out of any act or omission of the insured, or any other person or entity for whose acts or omissions the insured is legally liable, in respect of the insured's Employee Benefits.

As used in this exclusion, the term "Employee Benefits" means Group Life Insurance, Group Health Insurance, Profit-Sharing Plans, Pension Plans, Employee Stock Subscription Plans, Workers' Compensation, Unemployment Insurance, Social Security and Disability Benefits Insurance and the following: -

a.     giving counsel to employees with respect to Employee Benefits;

b.     interpreting the Employee Benefits;

c.     handling and keeping of records in connection with Employee Benefits;

d.     effecting enrolment, termination or cancellation of employees under the Employee Benefits;

e.   any dishonest, fraudulent, criminal, or malicious act or omission;

f.   failure of performance of contract by an insurer;

g.   lack of compliance with the terms of any contract, declaration of trust, or instrument providing Employee Benefits;

h.   lack of compliance with any law concerning Employee Benefits;

i.   failure to procure or maintain satisfactory and adequate insurance on Employee Benefits assets or property;

j.   failure of stock or other securities or of any investments of whatever kind to perform as represented;

k.   advice given to an employee to participate or not to participate in stock subscription or similar plans; and

l.   any liability arising out of the Employee Retirement Income Security Act and any other similar federal, state or other statutes, rules or regulations.

10.   a.   actual or alleged liability arising out of an insured's capacity, duty or responsibility as an officer, director or trustee of a corporation by reason of any breach of fiduciary duty or improper conduct or conflict of interest in the performance of an insured's duties, responsibilities or accountability as an officer, director or trustee, including without limitation, any actual or alleged misstatement, misleading statement, gain of personal profit or advantage to which the insured was or is not entitled legally, any dishonest act, or bad faith conduct, in the insured's capacity as an officer, director or trustee, or with respect to the capital, assets or securities of the corporation, or any action taken beyond the scope of the insured's authority as an officer, director or trustee;

b.   actual or alleged liability arising out of any violation(s) of any national federal, state or local law regulating, controlling and governing stock, bonds or securities of any type or nature, including, without limitation, liability under The Securities Act of 1933, The Securities Exchange Act of 1934, The Trust Indenture Act of 1939, The Public Utility Holding Company Act of 1935, The Investment Company Act of 1940, The Investment Advisers Act of 1940, and the so called "Blue Sky" Laws of the various States or other jurisdictions;

c.   actual or alleged liability of any officer, director or trustee arising out of a shareholder's derivative action;

d.   actual or alleged liability which would be payable under the terms of a Directors and Officers Liability Insurance Policy or a Directors and Company Reimbursement Indemnity Policy of the type issued by insurance companies of the United States of America, as if any insured had obtained such coverage in an amount sufficient to pay the full amount being claimed against any insured and any defence thereof, whether or not any insured has obtained such coverage.

11.   a.   actual or alleged liability arising out of or incident to any alleged violation(s) of any federal state or local law regulating, controlling and governing antitrust or the prohibition of monopolies, activities in restraint of trade, unfair methods of competition or deceptive acts and practices in trade and commerce including, without limitation, the Sherman Act, the Clayton Act, the Robinson-Patman Act, the Federal Trade Commission Act, The Hart-Scott Rodino Antitrust Improvements Act and the Racketeer Influenced And Corrupt Organizations Act;

b.   for any "Claims" for damages made by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, the Resolution Trust Company, and other depository insurance corporation, the Comptroller of the Currency, the Federal Home Loan Bank board or any other national, federal, state or local bank regulatory

DocuSign Envelope ID: 84B5D2DC-5086-43AF-BBCB-53B4DE91414E

agency, in its capacity as regulator, receiver, conservator, liquidator shareholder, successor in interest or assignee of the insured, whether such liability for damages is brought in the name of such agency or by or on behalf of such agency in the name of any other person; or

c.     actual or alleged liability arising out of or contributed to by the dishonesty, infidelity or fraud of any insured;

All other terms, clauses and conditions remain unaltered.

**Endorsement 7 to Section 1**

**Exclusion 5 of SUPPLEMENTARY EXCLUSIONS A (CGU12A) is deleted and replaced by the following:-**

5.      any act, negligence, error or omission, malpractice or mistake arising out of Professional Services committed or alleged to have been committed by or on behalf of the insured in the conduct of any of the insured's business activities.  Professional Services means the preparation or approval of audits, accounts, maps, plans, opinions, reports, surveys, designs or specifications and supervisory, inspection, engineering, or data processing services.

This exclusion shall not apply to bodily injury, personal injury, property damage and/or advertising injury that result directly from such Professional Services

All other terms, clauses and conditions remain unchanged.

**Endorsement 8 to Section 1**

**ADDITIONAL INSURED ENDORSEMENT**

**ADDITIONAL INSURED**

The words additional insured, wherever used in this Policy, shall mean any person or entity to whom the "insured" is obliged by an "insured contract" entered into before any relevant "occurrence" and/or claim other than in respect of oral contracts effected by the Insured in the event of an emergency circumstance, which to be executed in writing within 96 hours of the initial agreement, to provide insurance such as is afforded by this Policy with respect to "bodily injury" or "property damage" arising out of operations conducted by the "insured" but only to the extent required by any indemnity given by the "insured" in said "insured contract" to an additional insured.

All other terms, clauses and conditions remain unaltered.

**Endorsement 9 to Section 1**

**IN REM ENDORSEMENT**

Any occurrence or accident otherwise covered by this policy, resulting in any action "In Rem" shall in all respects be treated in the same manner as though the action resulting therefrom were "In Personam" against any insured.

All other terms, clauses and conditions remain unaltered.

(CGU 12 0 D)

**Endorsement 10 to Section 1**

**KNOWLEDGE OF OCCURRENCE**

It is agreed that only knowledge of an "occurrence" or claim by an agent, servant or "employee" of yours or any other person shall not in itself constitute knowledge by you, unless a manager in your risk management department or legal department shall have received notice from said agent, servant, "employee" or any other person.

All other terms, clauses and conditions remain unaltered.

**Endorsement 11 to Section 1**

**ACTIONS OVER INDEMNITY ENDORSEMENT**

Subject to all of the terms of this insurance, and notwithstanding any of the provisions of **SUPPLEMENTARY EXCLUSIONS A** 1., we will pay amounts for which you shall become liable to pay, on account of investigation, defense and indemnity as respects your responsibilities, if any, to third parties by virtue of defense and indemnity obligations assumed under written contract or agreement and arising from "bodily injury" of any of your "employees" except insofar as same may arise from occupational disease.

All other terms, clauses and conditions remain unaltered.

(CGU 12 0 A)

**Endorsement 12 to Section 1**

**WAIVER OF SUBROGATION ENDORSEMENT**

We agree to waive our rights of subrogation against any principal where waiver is required by written contract but only in respect of liability for Bodily Injury and/or Property Damage arising out of operations performed by you and only to the extent required under said written contract.


CGU12L


All other terms, clauses and conditions remain unaltered.

**Endorsement 13 to Section 1**

**HIRED AND NON-OWNED AUTO LIABILITY COVERAGE**

SCHEDULE

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| | Coverage | Additional Premium |
|---|---|---|
| Hired Auto Liability | 1,000,000 | $ Included |
| Non-Ownership Liability | 1,000,000 | $ Included |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

HIRED AUTO LIABILITY

This insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your employees in the course of your business,

NON-OWNED AUTO LIABILITY

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of any "non-owned auto" in your business by any person other than you,

With respect to the insurance provided by this endorsement:

1. The exclusions, under COVERAGE A (Section I), other than exclusions a, b, d, f and i are deleted and replaced by the following:

a. "Bodily injury":

(1) To any employee of the insured arising out of and in the course of employment by the insured; or

(2) To the spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1)  Whether the insured may be liable as an employer or in any other capacity;

(2) To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to:

(1) Liability assumed by the insured under an "insured contract"; or

(2) "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in part either payable or required to be provided under any workers compensation law.

b. "Property Damage" to:

(1) Property owned or being transported by, or rented or loaned to the insured; or

(2) Property in the care, custody or control of the insured.

2. WHO IS AN INSURED (Section II) is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

a. You;

b. Any other person using a "hired auto" with your permission;

c. With respect to a "non-owned auto", any partner or executive officer of yours, but only while such "non-owned auto" is being used in your business;

d. Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under a., b., or c. above.

None of the following is an insured:

a. Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment;

b. Any partner or executive officer with respect to any "auto" owned by such partner or officer or a member of his or her household;

c. Any person while employed in or otherwise engaged in duties in connection with an "auto business";

d. The owner or lessee (of whom you are a sub-lessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or employee of such owner or lessee;

e. Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

3. LIMITS OF INSURANCE (SECTION III)

The general aggregate limit does not apply to the insurance provided by this endorsement.

4, The following additional definitions apply:

"Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

"Hired auto" means any "auto" you lease, hire or borrow. This does not include any "auto" you lease, hire or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.

"Non-owned auto" means any "auto" you do not own, lease, hire or borrow which is used in connection with your business. However, if you are a partnership, a "non-owned auto" does not include any "auto owned by any partner.

The following is added to the definition of "insured contract":

"Insured contract" means that part of any contract or agreement entered into, as part of your business, by you or any of your employees pertaining to the rental or lease of any "auto";

An "insured contract" does not include that part of any contract or agreement:

1. That pertains to the loan, lease or rental of any "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

2. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of an "auto" over a route or territory that person or organization is authorized to serve by public authority.

5. OTHER INSURANCE

The insurance provided by this endorsement is excess over any other valid and collectible insurance available to the insured.

All other terms and conditions of the policy remain unchanged.

Policy Number: (UMR) B0180ME2017007

## SECURITY DETAILS

### REFERENCES

UMR (Unique Market Reference): B0180ME2017007

Date contract printed to PDF: 08:30 01 July 2020

## SIGNED UNDERWRITERS

**Ascot Syndicate**

George Leahy

| **Written Line** | 17.5% | **Signed Line** | 17.5% |
|---|---|---|---|
| **Agreed on** | 15:36 29 June 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Lloyd's Underwriter Syndicate No. 1414 ASC, London, England | | 17.5% | 17.5% |

**Bound**

| | *Lloyd's Stamp:* | 1414 |
|---|---|---|
| | *LORS Code:* | L1414 |
| | *Reference: Description:* | UU19LW186L3X |

---

**The Chaucer Group**

Oliver Litterick

| **Written Line** | 17.5% | **Signed Line** | 17.5% |
|---|---|---|---|
| **Agreed on** | 19:43 30 June 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Lloyd's Underwriter Syndicate No. 1084 CSL, London, England | | 17.5% | 17.5% |

**Bound as Lloyd's Leader**

| | *Lloyd's Stamp:* | 1084 |
|---|---|---|
| | *LORS Code:* | L1084 |
| | *Reference: Description:* | 11947020AB |
| | *Risk Code(s):* | 7T |
| | *Reference: Description:* | 11947020AA |
| | *Risk Code(s):* | EB |

Policy Number: (UMR) B0180ME2017007

**Talbot Underwriting Ltd**

Jeannie Schreiner

| | | | |
|---|---|---|---|
| **Written Line** | 20.00% | **Signed Line** | 20.00% |
| **Agreed on** | 18:22 30 June 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Lloyd's Underwriter Syndicate No. 1183 TAL, London, England | | 20.00% | 20.00% |
| **Bound** | | | |

| | | | |
|---|---|---|---|
| | *Lloyd's Stamp:* | 1183 | |
| | *LORS Code:* | L1183 | |
| | *Reference:* | CRZ278393A19 | |
| | *Description:* | Valtec Hydro GL | |

---

**Markel International Limited**

Kathryn Grahame

| | | | |
|---|---|---|---|
| **Written Line** | 20.00% | **Signed Line** | 20.00% |
| **Agreed on** | 17:37 30 June 2020 | | |

| **For and on behalf of:** | | **Written Line** | **Signed Line** |
|---|---|---|---|
| Markel International Ins Co Ltd, ILU 3622017 | | 20.00% | 20.00% |
| **Bound as Slip Leader, XIS Leader** | | | |

| | | | |
|---|---|---|---|
| | *XIS Code:* | 3622017 | |
| | *Reference:* | YA5650A19MZA | |
| | *Description:* | | |

**Subjectivities**

Warranted that all liability from power plants are excluded absolutely.

| **Deadline** | N/A | **Status** | Subjectivity has been satisfied |
|---|---|---|---|

Policy Number: (UMR) B0180ME2017007

## SETTLEMENT INFORMATION

**Allocation of Premium to Coding**

7T at 1.00%

EB at 99.00%

**Allocation of Premium to Year of Account**

2019

**Terms of Settlement**

| | |
|---|---|
| Settlement Due Date: | 30 August 2020 |
| Instalment Premium Period of Credit: | 60 day(s) |
| Adjustment Premium Period of Credit: | 60 day(s) |

Markel International Ins Co Ltd, ILU 3622017
**Bureau Leader and XIS Leader**
Kathryn Grahame

Lloyd's Underwriter Syndicate No. 1084 CSL, London, England
**Lloyd's Leader (Allocation of Premium to Coding)**
Oliver Litterick